*339 OPINION OF THE COURT
Herbert B. Ray, J.
I. INTRODUCTION
The instant decision involves one of the most difficult cases this court has faced. The court is confronted by a man legally determined to be a child’s father who seeks to have the finding of paternity set aside. The facts of this case are extremely unique because the child’s natural mother and custodian joins in this request. The parties and child submitted to blood tests. The uncontested results of this test, which were received in evidence, exclude the petitioning man as the natural father. Facts similar to this case have not arisen in any of the reported decisions.
The Law Guardian strenuously opposes the request to set aside the filiation order. He raises the doctrine of equitable estoppel as a defense to the application. As no individual maintains that he is the natural father and mother is unable or unwilling to reveal his identity, the child’s legal parentage is at stake.
II. PROCEDURAL HISTORY
This action was initiated on March 10, 1987, by Timothy J.’s handwritten petition which indicated that blood tests had revealed he was not the natural father of Sandy M.’s son, Matthew. Prior to the child’s birth on March 12, 1985, the Honorable Daniel Dickinson entered an order of filiation and support which adjudged Timothy J. to be the father of the child to be born to Sandy M. on or about September 12, 1985. The order specified, inter alia, that respondent waived his right to blood genetic marker tests and the HLA test. Respondent was provided a copy of this order.
Generally, a paternity agreement entered into between the parties is conclusive on the rights of the parties. (Family Ct Act § 516; Matter of Department of Social Servs. v Overdorf 115 AD2d 274 [1985]; Auleta v Bernadin, 113 Misc 2d 526 [1982].) A finding of respondent’s paternity was expressly found in the filiation order. Furthermore, a finding of paternity was necessary for respondent’s subsequent requests of the court and for the support order later entered. (See, Matter of Nacey v Nacey, 116 AD2d 933 [1986], and cases cited therein.)
On September 5, 1985, Sandy gave birth out of wedlock to a son, Matthew. On April 29, 1986, when Matthew was seven *340 months old, Mr. J. filed a petition requesting partial custody of the child which alleged, in pertinent part, that it was hard for him to see his son because mother’s family was uncooperative. On May 21, 1986, Mr. J. withdrew this petition.
On April 23, 1987 an order to show cause was filed as a follow-up to the original petition. Petitioner was now represented and detailed factual affidavits were submitted in support of the motion to vacate the filiation order. The motion and affidavit assert that the filiation order must be set aside in the interests of justice on the basis of newly discovered evidence and/or fraud. These issues will be discussed hereafter as well as the defense of equitable estoppel raised by the Law Guardian.
III. GROUNDS FOR RESCISSION
Petitioner correctly cites the case of Lascaris v Hinman (120 Misc 2d 954, 956 [1983]) for the general law that "[t]he grounds for vacating an order are excusable default, newly discovered evidence, fraud, misrepresentation, or other misconduct of an adverse party among others.” CPLR 5015 codifies those instances in which a court which rendered a judgment or order may relieve a party from it. Any interested person may make such a motion with such notice as the court may direct. The two grounds respondent asserts which justify the relief he seeks are: newly discovered evidence which, if introduced at the trial would probably have produced a different result and which could not have been discovered in time to move for a new trial under CPLR 4404; or fraud, misrepresentation, or other misconduct of an adverse party. (CPLR 5015.)
Petitioner’s assertion that the recently administered blood tests constitute newly discovered evidence pursuant to CPLR 5015 is frivolous. Petitioner did not avail himself of the opportunity to request blood tests prior to the birth of the child. Hence, such evidence was discoverable prior to judgment, and is therefore not "newly” discovered. (See, Matter of June B. v Edward L., 69 AD2d 612 [1979].)
However, petitioner’s second contention that Ms. M.’s conduct constituted fraud and actual misrepresentation has merit. The Law Guardian, the only party contesting the requested relief, concedes that such grounds to consider rescission of the judgment were presented. At page three, point two of the memorandum of law dated December 24, 1987, he states *341 that "[i]n the instant case, the respondent may have shown sufficient grounds to reopen the judgment.”
The court finds that the evidence does justify the exercise of the court’s equity powers to set aside the judgment. The evidence was uncontroverted that prior to his courtroom admission of paternity, Mr. J. specifically questioned Ms. M. as to whether she had engaged in sexual relations with anyone other than himself during the time period of potential conception. With full knowledge of its falsity, respondent assured petitioner that he was the only person who could have fathered her child. Petitioner did not have any reason to believe that she was not telling him the truth. He had been involved in a serious and sexual relationship with Ms. M. for a lengthy time. For this reason and to do what he perceived as the appropriate behavior, he agreed to the entry of a filiation order and waived the right to request blood tests.
It was not until recently that he first questioned whether he was the biological father of the child. Respondent mother told him that he was not the child’s natural father and that she would pay for blood tests "to prove it”. She did so.
This case is dissimilar to the recently reported decision of Matter of Constance S. v Steven A. (130 AD2d 493 [2d Dept, May 1987]), which reversed a Family Court decision to reopen a paternity proceeding. In doing so the Appellate Division specifically found that:' "More than eight years after the paternity determination the instant application was brought. The respondent has not presented any proof that he is not the father of the child. Under these circumstances 'something other than a request for a HLA test is required to negate [the respondent’s] prior admission of being the natural father’ (Patricia W. v Michael R., 113 AD2d 935, 936).” (Supra, at 494.) That "other something” has been presented in the instant case. Respondent mother deliberately lied to petitioner as to another man’s access. This misrepresentation was knowing and petitioner detrimentally relied on the falsehood. Mother now admits that she had sexual relations with another person at a time when she conceived the child and the blood tests the parties obtained specify that petitioner is not the biological father of the child. The filiation order shall be vacated based upon the "fraud, misrepresentation, or other misconduct of an adverse party”. (CPLR 5015 [a] [3].)
IV. EQUITABLE ESTOPPEL
The Law Guardian contends that petitioner’s "motion *342 should be denied due to equitable estoppel.” The Law Guardian’s thorough review of the case law is commended. However this court does not agree with the Law Guardian’s application of these cases or the doctrine of equitable estoppel to the instant matter.
Equitable estoppel has been defined as follows: "the doctrine of equitable estoppel may successfully be invoked, in the interest of fairness, to prevent the enforcement of rights which would ultimately work fraud or injustice upon the person against whom enforcement is sought (see, Nassau Trust Co. v Montrose Concrete Prods. Corp., 56 NY2d 175, 184). An estoppel defense may also be invoked where the failure to promptly assert a right has given rise to circumstances rendering it inequitable to permit the exercise of the right after a lapse of time (see, 57 NY Jur 2d, Estoppel, Ratification, and Waiver, § 27). Because of the same qualitative considerations which support the invocation of estoppel in other areas of law, the courts, in more recent years, have recognized the availability of this doctrine as a viable defense in various forms of proceedings involving domestic disputes.” (Matter of Ettore I. v Angela D., 127 AD2d 6, 12 [1987].) A review of the reported decisions successfully invoking the doctrine of equitable estoppel reveal facts not present in the instant case. The doctrine has been applied to prevent illegitimatizing children and to avoid the destruction of an ongoing parent-child relationship. The child of respondent mother was born out of wedlock and the child has no relationship whatsoever with petitioner. Mother admits that she has attempted to obstruct petitioner’s previous requests for visitation. She testified that she did not and does not want petitioner to have even a limited relationship with this child. Nor did petitioner allow a protracted period of time to expire prior to instituting proceedings. He acted almost immediately upon notice of mother’s deception. An earlier statement mother made to Mr. J. that he was not the father of the child was later retracted by mother. As this statement was made during a heated argument and subsequently retracted, petitioner was reasonable in his belief that mother’s retraction was truthful.
The Appellate Division notes that the "unequivocal trend and evident purpose” of the equitable estoppel decisions has been to "zealously safeguard the welfare, stability and best interests of the child”. (Matter of Ettore I. v Angela D., 127 AD2d 6, 13, supra.)
"As a practical matter, if there is anything that the body of *343 case law does suggest it is that the paramount concern in this type of case should be the best interests of the child (see also, Matter of Ronald FF. v Cindy GG., 117 AD2d 332; Golser v Golser, 115 AD2d 695; Matter of June B. v Edward L., 69 AD2d 612). Indeed, as noted by an eminent authority on filiation proceedings:
" 'The old conception of paternity proceedings as being designed chiefly to spare the public the expense of supporting the child has been replaced by a more enlightened view. Courts now hold that the chief purpose of the paternity proceeding is to secure the health, welfare and happiness of the child.’ * * * (1 Schatkin, Disputed Paternity Proceedings § 1.09, at 1-48 — 1-49 [4th ed rev, 1985]).” (Matter of Ettore I. v Angela D., 127 AD2d 6, 14-15, supra.)
It is within the best interest of two-year-old Matthew to set aside the filiation order. Matthew’s mother who is his sole emotional and financial support requests this court to do so. She so desperately wished to terminate petitioner’s contact with her son she volunteered to pay for the blood tests and faced the prospect of admitting that she had lied to petitioner. She is adamant in her position. Certainly to force her, the child and the petitioner to continue their relationship, over the objection of both adults, is not in the best interest of the child. The child’s well-being is dependent upon the mother’s well-being.
Any contact Matthew would have with petitioner, who does not want to support the child, would be detrimental. Petitioner would resent the child and the child would sense this. No evidence was presented to support a finding that the child’s best interest would be fostered by continuing this relationship.
This court is extremely concerned with the best interest of the child, Matthew. The court concludes that the vindication of petitioner’s right to set aside the paternity order and the child’s emotional well-being will be served by vacating the previous finding of paternity.
Accordingly the following is entered:
ORDER
Petitioner Timothy J.’s motion to vacate and set aside the filiation order entered March 12, 1985 is granted effective the date of this decision. Timothy is not relieved of any previous court orders entered with respect to support or confinement *344 expenses which accrued prior to the date of this decision. No party or entity is precluded from instituting a paternity proceeding in the future against Timothy J. concerning the child, Matthew. As Sandy M. has decided not to proceed at this time, the underlying filiation petition is dismissed as of the date of this order.