**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2296-15T2

HABITATE, LLC and THOMAS MARTIN,
individually,

    Plaintiffs-Appellants,

v.

CITY OF BRIDGETON; RENEWABLE
JERSEY, LLC,

    Defendants-Respondents,

and

ROBERT REYERS and
CLAUS AND REYERS COMPANY,
a Delaware Corporation,

    Defendants.

_____

Argued May 17, 2017 — Decided July 21, 2017

Before Judges Alvarez, Accurso, and Lisa.

On appeal from the Superior Court of New
Jersey, Law Division, Cumberland County,
Docket No. L-517-13.

Keith A. Bonchi argued the cause for
appellants (Goldenberg, Mackler, Sayegh,
Mintz, Pfeffer, Bonchi & Gill, attorneys; Mr.
Bonchi, of counsel and on the briefs; Elliott
J. Almanza, on the briefs).

Jack Plackter argued the cause for respondent Renewable Jersey, LLC (Fox Rothschild LLP, attorneys; Mr. Plackter, of counsel and on the brief; Bridget A. Sykes, on the brief).

Matthew Toto argued the cause for respondent City of Bridgeton (Traub Lieberman Straus & Shrewsberry LLP, attorneys; Mr. Toto, on the brief).

PER CURIAM

On May 11, 2016, a Chancery Division judge granted defendants, the City of Bridgeton, Renewable Jersey LLC (Renewable), Robert Reyers, and Claus and Reyers Company (CAR), summary judgment dismissing a five-count amended complaint in lieu of prerogative writs. The judge also denied plaintiffs, Habitate LLC and Thomas Martin's, demand for discovery. We now reverse in part and affirm in part.

The complaint sought damages for Bridgeton's alleged illegal manipulation of land titles; alleged a conspiracy by Bridgeton, Renewable, Reyers, and CAR; sought to quiet title in plaintiffs of Bridgeton Block 132, Lot 1.02; alleged defendants engaged in fraud; and sought a declaration that a judgment against Reyers totaling $7975.55 was a valid lien against the land.

The initial complaint had been stayed while the related tax sale foreclosure appeal was completed. That matter can be found at <u>Habitate, LLC v. R&R Holdings, LLC</u>, No. A-4262-12 (App. Div.

Feb. 6, 2015). The petition for certification was denied by the Supreme Court on June 19, 2015. 222 N.J. 15 (2015).

We very briefly summarize the necessary facts. On July 12, 2012, Habitate obtained a default judgment in a foreclosure action on a tax sale certificate against Block 132, Lot 1.02's record owner, R&R Holdings, LLC (R&R). R&R had acquired the property from Bridgeton in 2004 upon its promise to create forty full-time jobs at the subject property. Reyers was the owner of R&R. Thereafter, defendant Renewable, Bridgeton's redeveloper, was granted leave to intervene in the proceeding, and redeemed the property for $80,320, the amount due to Habitate with interest on the tax sale certificate plus an additional $5000 payment to the record owner. At the time Bridgeton conveyed ownership of the land to R&R, the company had not yet been incorporated and Reyers had nearly $194,263 in personal judgments against him.

While the first appeal involving the tax sale certificate was pending, the defendants apparently discovered that the 2004 conveyance to R&R had been made to a non-existent corporation. As a result on May 7, 2013, at an open council meeting, Bridgeton adopted a resolution authorizing a corrective deed, and reissued the deed to the property to CAR. Reyers had revived CAR, a previously defunct corporation, in preparation to take title when the second deed issued. Corporate paperwork was completed so that

R&R quitclaimed any interest it had into CAR, and the land then transferred from CAR to Renewable. The purpose of Bridgeton's ordinance, the new deeds, and corporate resolutions was to ensure that Renewable obtained clear title. Renewable is a redeveloper whose acquisition of the property is important to a renewal project in Bridgeton. Renewable promptly encumbered the land with a $100,000 mortgage.

Habitate had filed the first appeal in order to challenge the judgment allowing Renewable to intervene and redeem in the action to foreclose on the tax sale certificate. In the earlier matter, Habitate had suggested that the lot was valuable because, as of 2015, it had a deep water well allegedly worth $30,000, and a sewer connection worth $500,000.

In the tax foreclosure appeal, like the Chancery judge, we were aware of Habitate's parallel complaint in this case. We said: "This is not to express any opinion on Habitate's pending litigation for the harm it alleges as a result of Bridgeton's second deed to CAR to effectuate its conveyance to Renewable." Habitate , LLC, supra, slip op. at 18-19. In the tax sale foreclosure matter, the Chancery judge had stated in her decision regarding Habitate's complaint, "Fraud and other claims are best handled in that action and not as part of the tax sale certificate foreclosure/redemption."

Applying the doctrine of res judicata, the Chancery judge dismissed the complaint in this case before discovery. She concluded that since Renewable's intervention in the tax foreclosure, and redemption of the tax sale certificate, had been found to be lawful, and upheld on appeal, nothing further could be adjudicated.

As to Martin's purchase of a judgment lien against Reyers, the judge held that since the assignment to Martin was made six months after the redemption order in the tax sale foreclosure, the judgment did not follow the land and did not constitute a valid lien on the property. Martin further argued that he had standing in this case by virtue of being a citizen taxpayer of Bridgeton. Since he offered no law in support of the proposition, the claim was rejected.

Finally, with regard to Bridgeton, the court found that the claims were barred by the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to -12-3. Since the complaint was dismissed, naturally the motion to commence discovery was denied as moot. The Chancery judge said "[i]n taking no position [in the tax foreclosure,] this court reserved its discretion to grant or deny summary judgment." Now on appeal, plaintiffs raise the following points of error:

POINT ONE
RES JUDICATA DOES NOT BAR THIS ACTION

POINT TWO
HABITATE AND THOMAS MARTIN HAVE STANDING

POINT THREE
THE CLAIMS AGAINST BRIDGETON ARE NOT BARRED
BY ANY PROVISION OF THE TORT CLAIMS ACT

A: <u>N.J.S.A.</u> 59:2-10 DOES NOT APPLY TO THIS
ACTION
B: <u>N.J.S.A.</u> 59:2-4 DOES NOT APPLY TO THIS
ACTION
C: <u>N.J.S.A.</u> 59:2-9 DOES NOT APPLY TO THIS
ACTION.

I.

"A ruling on summary judgment is reviewed de novo." <u>Davis v. Brickman Landscaping, LTD.</u>, 219 <u>N.J.</u> 395, 405 (2014) (citing <u>Manahawkin Convalescent v. O'Neill</u>, 217 <u>N.J.</u> 99, 115 (2014)). Thus, our review requires application of the same standard which governs the trial court. <u>Ibid.</u> (citing <u>Murray v. Plainfield Rescue Squad</u>, 210 <u>N.J.</u> 581, 584 (2012)).

A motion for summary judgment should be granted when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. <u>Brill v. Guardian Life Ins. Co. of Am.</u>, 142 <u>N.J.</u> 520, 540 (1995); <u>R.</u> 4:46-2. Facts are to be viewed in a light most favorable to the non-moving party. <u>Brill</u>, <u>supra</u>, 142 <u>N.J.</u> at 540.

II.

A.

Plaintiffs contend that no preclusionary doctrine bars them from pursuing the causes of action alleged in their complaint. But for the cause of action set forth in the fifth count by Thomas Martin, we agree that dismissal at this stage was improper. Thus we first address the Chancery judge's decision that the doctrine of res judicata was dispositive. We also address her determination that collateral estoppel and the entire controversy doctrine are additional bars to plaintiffs' ability to pursue the matter.

Res judicata is an ancient judicial doctrine which "contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation." Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 172 (App. Div.) (quoting Lubliner v. Bd. of Alcoholic Beverage Control for City of Paterson, 33 N.J. 428, 435 (1960)), certif. denied, 164 N.J. 188 (2000). In order for res judicata to apply, the party asserting the doctrine must show: "(1) a final judgment by a court of competent jurisdiction, (2) identity of issues, (3) identity of parties, and (4) identity of the cause of action." Brookshire Equities, LLC v. Montaquiza, 346 N.J. Super. 310, 318-319 (App. Div.) (citation omitted), certif. denied, 172 N.J. 179 (2002).

The parties in this case are essentially the same as in the tax sale foreclosure proceeding. And the factual circumstances that led to that lawsuit and appeal, explain this one. In our opinion, however, there is a significant dissimilarity between the issues raised in the two lawsuits.

Plaintiffs' action in lieu of prerogative writs alleges that Bridgeton, conspiring with Reyers to the benefit of Renewable, engaged in the illegal manipulation of land titles. That issue is clearly not one encompassed by the tax sale certificate foreclosure action. In the tax sale action, the question for decision was whether Renewable had the right to intervene and discharge the certificate. Although those circumstances are an essential part of this case, they do not resolve the matter.

Plaintiffs also seek to quiet title to Block 132, Lot 1.02 in Habitate. In a manner of speaking they sought the same relief in the tax foreclosure — but for different reasons.

The claim of fraud, although raised in the tax foreclosure action, was found to be without merit. Obviously, that is an issue which, although it was raised to stop Renewable's intervention, will be resolved separately from, and on different proofs than, the tax sale foreclosure matter. When we examine the elements of res judicata here, there appear to be different claims

in this lawsuit than those raised in the tax foreclosure matter. Thus res judicata does not apply.

B.

"The doctrine of collateral estoppel is a branch of the broader law of res judicata which bars relitigation of any issue actually determined in a prior action generally between the same parties and their privies involving a different claim or cause of action." Selective Ins. Co., supra, 327 N.J. Super. at 173 (citation omitted). For the doctrine of collateral estoppel to apply, the party asserting the bar must show that: "(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521-522 (2006)(quoting In re Estate of Dawson, 136 N.J. 1, 20 (1994)).

The distinguishing feature of collateral estoppel is "that it alone bars relitigation of issues in suits that arise from different causes of action." Selective Ins. Co., supra, 327 N.J. Super. at 173. Thus, "[r]es judicata applies when either party

attempts to relitigate the same cause of action. Collateral estoppel applies when either party attempts to relitigate facts necessary to a prior judgment." T.W. v. A.W., 224 N.J. Super. 675, 682 (App. Div. 1988), certif. denied, 117 N.J. 44 (1989). Since collateral estoppel is an equitable doctrine, "it should only be applied when fairness requires." Pivnick v. Beck, 326 N.J. Super. 474, 486 (App. Div. 1999), aff'd, 165 N.J. 670 (2000). In determining whether to apply collateral estoppel, courts should consider the following factors:

> Some of the factors favoring application of issue preclusion are: conservation of judicial resources; avoidance of repetitious litigation; and prevention of waste, harassment, uncertainty and inconsistency. In contrast, factors disfavoring application of collateral estoppel include: the party against whom preclusion was sought could not have obtained review of the judgment in the initial action; the quality or extensiveness of the procedures in the two actions were different; it was not foreseeable at the time of the initial action that the issue would arise in subsequent litigation; and the party sought to be precluded did not have an adequate opportunity to obtain a full and fair adjudication in the first action.
>
> [Ibid. (internal citations omitted).]

The question whether collateral estoppel justifies dismissal is more difficult than the decision regarding res judicata. The facts are to some extent the same. But it seems unfair to find plaintiffs are collaterally estopped from pursuing this case when,

at least in part, the outcome in the that first matter is itself the event plaintiffs claim inflicted harm upon them. We therefore conclude that at least at this stage there is sufficient distinction between the two causes of action to warrant reinstatement of the complaint.

The Chancery judge's determination that the corrective deed Bridgeton issued was valid was made within the context of a tax sale foreclosure and for the purpose of adjudicating a dispute limited by the statutes and rules that define the litigation. This case includes facts and circumstances outside that narrow corridor. Therefore at this juncture, before discovery, collateral estoppel does not compel the dismissal of plaintiffs' complaint.

### C.

Finally, Renewable argues that summary judgment should be affirmed because the complaint is barred by the entire controversy doctrine. "The entire controversy doctrine bars a subsequent action only when a prior action based on the same transactional facts has been tried to judgment or settled." Arena v. Borough of Jamesburg, 309 N.J. Super. 106, 111 (App. Div. 1998). However, "[o]nly a judgment 'on the merits' will preclude a later action on the same claim." Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 415 (1991) (citation omitted).

The trial court explicitly stated that plaintiffs' fraud claims were best dealt with in a separate proceeding. Our decision was not meant to "express any opinion on Habitate's pending litigation for the harm it alleges as a result of Bridgeton's second deed to CAR to effectuate its conveyance to renewable." Habitate, LLC, supra, slip op. at 18-19. As we have said, the same transactional facts apply to both actions — except that in this case the facts necessary to the tax sale foreclosure are only part of the story. Plaintiffs here have never been afforded the opportunity to explore conduct they allege was unlawful. Since these issues have never been decided, and no judgment on the merits ever issued, the doctrine does not bar the case at this stage.

## III.

We agree that Habitate has standing to pursue this case as a former tax certificate holder since Habitate contends it lost the opportunity to acquire title to Block 132, Lot 1.02. Martin, however, is another issue.

"Standing has been broadly construed in New Jersey as 'our courts have considered the threshold for standing to be fairly low.'" Triffin v. Somerset Valley Bank, 343 N.J. Super. 73, 81 (App. Div. 2001) (quoting Reaves v. Egg Harbor Twp., 277 N.J. Super. 360, 366 (Ch. Div. 1994)). In order to obtain standing, "a party must have a sufficient stake and real adverseness with

respect to the subject matter of the litigation." Lopresti v. Wells Fargo Bank, N.A., 435 N.J. Super. 311, 318 (App. Div.) (internal quotation marks and citation omitted), certif. denied, 219 N.J. 629 (2014). However, courts have held that "[a] financial interest in the outcome ordinarily is sufficient to confer standing." Ibid. (quoting Strulowitz v. Provident Life & Cas. Ins. Co., 357 N.J. Super. 454, 459 (App. Div.), certif. denied, 177 N.J. 220 (2003)).

Martin's interest was acquired October 25, 2013, months after the redemption order in the tax sale foreclosure matter and the filing of the prerogative writs action. The purchase was clearly intended to provide Martin with standing and an interest even after the tax sale certificate foreclosure.

Habitate alleges it suffered an ascertainable loss in being prevented from exercising its right to foreclose on its tax sale certificate by a scheme it claims was fraudulent. In purchasing the tax sale certificate, it acquired the following rights:

> (1) the right to receive the sum paid for the certificate with interest at the redemption rate for which the property was sold, up to a maximum of 18%, N.J.S.A. 54:5-32, -58; (2) the right to redeem from any other holder a subsequently issued tax sale certificate, Realty Sales Corp. v. Payne, 76 N.J. Super. 59, 61-62 (Ch. Div. 1962), aff'd o.b., 78 N.J. Super. 504 (App. Div.), certif. denied, 41 N.J. 162 (1963); and, most importantly, (3) the right to acquire title

> by foreclosing the equity of redemption of all outstanding interests, including the owner's, N.J.S.A. 54:5-86.  Township of Jefferson v. Block 447A, Lot 10, 228 N.J. Super. 1, 4-5 (App. Div. 1988).
>
> [Caput Mortuum, L.L.C. v. S&S Crown Servs., Ltd., 366 N.J. Super. 323, 336 (App. Div. 2004).]

Thus Habitate, as original holder of the certificate, had at least the potential ability to acquire title to the property.  Therefore, it arguably has an interest in the events leading up to the issuance of the corrective deed.

Habitate also has standing to challenge municipal action. "New Jersey has a broad definition of standing when it comes to challenging governmental actions[.]"  Loigman v. Twp. Comm. of Middletown, 297 N.J. Super. 287, 294 (App. Div. 1997).  Moreover, "taxpayer intervention is appropriate where there are claims of fraud or corruption."  Id. at 295.  As Habitate challenges Bridgeton's resolution authorizing the corrective deed based on allegations of a fraudulent scheme, Habitate has standing to bring the prerogative writs action.

Martin has standing only as to the judgment against Reyers personally, not incidental to the events leading to the eventual acquisition of clear title to Block 132, Lot 1.02, or in this lawsuit.  The dismissal of the fifth count is therefore affirmed.

14

IV.

The trial court concluded that the TCA barred any cause of action against Bridgeton.  We do not agree.

The Chancery Division judge relied on portions of the TCA that provide that a public entity is not liable for the conduct of its employees even if fraudulent, liable for injuries caused by adopting a law or failing to enforce a law, or acts or omissions resulting in a slander on the title of property.  See N.J.S.A. 59:2-10; 59:2-4; 59:2-9.  None of these provisions are relevant to Habitate's claims against Bridgeton.  Habitate seeks an order voiding the resolution authorizing the issuance of a new deed to CAR, which it alleges resulted in the "illegal manipulation of land titles."  None of those provisions in the TCA bar plaintiff's claim.  Municipal action can be vacated when it amounts to a fraud. See Zakutansky v. Bayonne, 88 N.J. Super. 516, 526 (App. Div. 1965).  "Judicial review of an ordinance is limited to the motivation of those enacting it. So long as it is motivated by public welfare, and is not tainted with fraud or some clear perversion of power, there is no occasion for judicial intervention."  Ibid.  But the question Habitate poses is whether the ordinance and deed were so "tainted."

In Simon v. Deptford Twp., 272 N.J. Super. 21, 24-25 (App. Div.), certif. denied, 137 N.J. 310 (1994), the plaintiffs brought

15                                          A-2296-15T2

an action in lieu of prerogative writs against the city seeking to nullify their purchase of tax sale certificates based on mutual mistake and fraud. Although we affirmed the dismissal of plaintiffs' fraud claim, we noted that while the facts in that case did not support a claim for fraud, the decision was not meant to "undercut[] the potential viability of a documented fraud claim" in a tax sale matter. Id. at 30. Plaintiffs have not alleged that any specific employee engaged in fraud, and a claim for fraud can be brought against a municipal entity seeking to vacate a municipal action, therefore N.J.S.A. 59:2-10 also does not bar plaintiffs' claims against Bridgeton.[1]

Bridgeton further asserts that N.J.S.A. 59:2-5 applies. That section of the TCA grants immunity against injuries caused by the enumerated actions found in the statute including "denial, suspension, or revocation of, or by the failure or refusal to issue, deny, suspend or revoke" permits, licenses, and similar documents. This provision does not apply. Plaintiffs' allegations are focused on the resolution Bridgeton adopted in order to reconvey ownership of the land to CAR. But for that action, there

---

[1] Bridgeton points out that N.J.S.A. 59:9-2 bars punitive damages claim against a municipality. We agree. In their reply brief, plaintiffs acknowledge this.

would be no lawsuit.  It does not fall within any of the categories mentioned in the TCA.

To reiterate, although we affirm the dismissal of the fifth count, in which Martin individually sought by the purchase of a judgment to intervene, we otherwise reverse.  The first four counts of the complaint are reinstated and the matter can proceed to discovery.  Nothing in this opinion is to be construed as indicating, one way or another, any opinion with regard to any future motions for summary judgment or the ultimate outcome of the case, should it be tried.

Reversed in part, but the summary dismissal of count five is affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION