**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5548-16T2

CROSSLINK TECHNOLOGIES,
INC.,

     Plaintiff-Appellant,

v.

ATLANTA TRADING &
ENGINEERING CONSULTING,
LLC, TETRO SYSTEMS, LLC,
and AHMED ABOGENDIA,

     Defendants/Third-Party
     Plaintiffs-Respondents,

v.

AMIRIT TECHNOLOGIES,
INC., RAJEEV SHARMA, RITU
SHARMA, AMITA MAHAJAN,
and ASHEESH MAHAJAN,

     Third-Party Defendants.

_____

Argued October 11, 2018 – Decided September 3, 2019

Before Judges Whipple and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2348-15.

Daniel Ginzburg argued the cause for appellant (The Ginzburg Law Firm, PC, attorneys; Daniel Ginzburg, on the briefs).

Denis F. Driscoll argued the cause for respondents (Inglesino, Webster, Wyciskala & Taylor, LLC, attorneys; Denis F. Driscoll and Owen T. Weaver, on the brief).

PER CURIAM

Plaintiff Crosslink Technologies, Inc. (Crosslink) appeals from the July 28, 2017 order of the Law Division granting summary judgment to defendants and dismissing Crosslink's complaint for lack of jurisdiction. We affirm.

I.

The following facts are derived from the record. Crosslink provides engineering-related and construction services to wireless communications companies in New Jersey and elsewhere.[1] A portion of its business involves the placement of its employees in temporary positions with mobile telephone service providers for the completion of discrete projects. Crosslink is an affiliate of third-party defendant Amirit Technologies, Inc. (Amirit), which provides the same services as Crosslink. Third-party defendants Rajeev Sharma and Asheesh

---

[1] Crosslink was previously known as Crosslink Technologies, LLC.

A-5548-16T2

Mahajan are owners and principals of both Amirit and Crosslink. At all relevant times, neither Crosslink nor Amirit were licensed and/or registered as a private employment agency pursuant to the Private Employment Agency Act (Act), N.J.S.A. 34:8-43 to -66.

Prior to March 11, 2015, Amirit had a business relationship with T-Mobile, Inc. (T-Mobile), a mobile telephone service provider, and would provide its employees to perform services to T-Mobile for a fee. Although many of Amirit's employees were assigned to T-Mobile for years, those employees were never employees of T-Mobile.

Defendant Atlanta Trading & Engineering Consulting, LLC (Atlanta Trading) provides engineering services to wireless communications companies. On occasion, Atlanta Trading worked as a subcontractor for Amirit through agreements in which Amirit outsourced a portion of its work for its clients, including T-Mobile, to Atlanta Trading. Defendant Ahmed Abogendia is a principal of Atlanta Trading.

On March 11, 2015, T-Mobile terminated its business relationship with Amirit. T-Mobile, however, informed Amirit it wished to retain the twenty-three Amirit employees then working on projects at T-Mobile. Amirit, motivated by a desire to protect both its employees and its revenue source,

3

sought to find a replacement for itself as the entity supplying the twenty-three employees to T-Mobile.

On April 14, 2015, the principals of Amirit and Atlanta Trading met. Crosslink alleges that at that meeting, Amirit and Atlanta Trading entered into an oral agreement. According to Crosslink, Atlanta Trading agreed to hire the twenty-three employees previously assigned to T-Mobile by Amirit and retain five percent of the revenue it received from T-Mobile for the employees' work. The remaining ninety-five percent of the revenue would be given to Amirit.

The parties agreed to, in effect, prevent T-Mobile from becoming aware that Amirit, with which it had severed its business ties, was receiving any revenue from the employees. Atlanta Trading alleges that Sharma and/or Mahajan told Atlanta Trading to remit the ninety-five percent of revenue to Crosslink and to make the payments through a subsidiary of Atlanta Trading, Singular Tech, LLC (Singular).

Following the meeting between the principals, the twenty-three employees switched their employment to Atlanta Trading and remained in their positions at T-Mobile. Atlanta Trading began billing T-Mobile for the services provided by the employees. Although Singular transferred some payments to Crosslink, it later refused Crosslink's demands for ninety-five percent of the revenue it was

4

receiving from T-Mobile. Ultimately, Atlanta Trading informed Crosslink that it did not believe the parties had entered into a binding contract.

On October 5, 2015, Crosslink filed a complaint in the Law Division alleging breach of contract, fraud in the inducement, quantum meruit, unjust enrichment, theft of trade secrets, violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -210, and violations of the Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20 to -34. Crosslink sought compensatory damages of $5,257,297.90, punitive damages, an accounting, interest, attorney's fees and costs.

After a non-binding arbitration award in their favor and the scheduling of a trial date, defendants moved for summary judgment, arguing a lack of jurisdiction based on Crosslink's failure to register as a private employment agency under the Act. Crosslink cross-moved to adjourn the trial date, arguing a need to conduct discovery and unavailability of counsel, and that defendants' motion was untimely.

On February 27, 2017, the trial court denied defendants' motion, finding that it was untimely because it was not filed and returnable thirty days in advance of the first trial date. In addition, the court denied Crosslink's cross-motion and dismissed the complaint for lack of prosecution.

On March 10, 2017, Crosslink moved for reconsideration of the order dismissing its complaint. Defendants cross-moved to dismiss the complaint, again arguing Crosslink's failure to register as a private employment agency under the Act deprives the court of jurisdiction to entertain Crosslink's complaint.

On April 11, 2017, the court granted Crosslink's motion in part, allowing it to take Abogendia's deposition. The court also denied defendants' cross-motion. The court did not provide written or oral findings of fact or conclusions of law.

Just prior to trial, defendants again moved to dismiss the complaint for failure to state a claim, arguing a lack of jurisdiction under the Act. Crosslink opposed the motion on the merits and argued that defendants were precluded from making the motion by collateral estoppel and the law of the case doctrine.

On July 28, 2017, the trial court granted defendants' motion. The court rejected Crosslink's argument under the law of the case doctrine, concluding "that there was no ruling on the merits of defendant[s' prior] application[s]" and "no hearing on the merits of the issues raised" in opposition to defendants' prior motions. With respect to the question of jurisdiction, the court concluded that Crosslink was an employment agency as defined by the Act, but had failed to

6

obtain a license as required by the statute. Thus, the court concluded, Crosslink was subject to the Act's bar on filing suit to collect a fee, charge, or commission for the performance of employment services. N.J.S.A. 34:8-45(b). The court entered an order granting defendants' summary judgment motion and dismissing the complaint for lack of jurisdiction.[2]

This appeal followed. Crosslink argues that the court erred in not barring defendants' motion under the collateral estoppel and law of the case doctrines. In addition, Crosslink argues that the court incorrectly concluded that Crosslink was subject to the Act and its provision precluding suit to collect fees for employment agency services by an unlicensed entity.

## II.

> [W]here a litigation has not terminated, an interlocutory order is always subject to revision where the judge believes it would be just to do so. The rules governing final judgements, for example, that evidence must be newly discovered to be considered, R. 4:50-1(b), do not apply in the interlocutory setting. Nor is the judge constrained, as would a reviewing court be, by the original record.
>
> [Lombardi v. Masso, 207 N.J. 517, 536-37 (2011).]

---

[2] Although defendants moved to dismiss the complaint for failure to state a claim upon which relief may be granted, the court employed the summary judgment standard because it considered materials outside of the pleadings.

A-5548-16T2

"The 'law of the case' doctrine sometimes requires a decision of law made in a particular case to be respected by all other lower or equal courts during the pendency of that case." State v. Reldan, 100 N.J. 187, 203 (1985). However, the doctrine, "insofar as it is applied to rules or orders of an interlocutory nature is itself discretionary. It should be applied flexibly to serve the interests of justice." Id. at 205. "Thus the proper exercise of this discretion should take into account a number of relevant factors that bear on the pursuit of justice and, particularly, the search for truth." Ibid.

The factors to be considered in re-examining an interlocutory order are: (1) an unfair advantage over the non-moving party, (2) the moving party's good faith, and (3) fairness to the non-moving party. Id. at 205-06. "In short, the law of the case doctrine does not obligate a judge to slavishly follow an erroneous or uncertain interlocutory ruling." Gonzalez v. Ideal Tile Importing Co., 371 N.J. Super. 349, 356 (App. Div. 2004). Whether the court "correctly applied the law-of-the-case doctrine is a matter of law, and therefore our standard of review is de novo." State v. K.P.S., 221 N.J. 266, 276 (2015).

After carefully reviewing Crosslink's arguments in light of the record and applicable legal principles, we find no error in the court's consideration of defendants' third motion to dismiss the complaint for lack of jurisdiction. It is

clear from the record that defendants' motion was denied by the court the first two times it was made based on procedural considerations. There are no findings of fact or conclusions of law by the court with respect to whether the Act barred Crosslink's complaint prior to the July 28, 2017 hearing on defendants' third motion. Simply put, there was no law of the case with respect to jurisdiction prior to entry of the July 28, 2017 order.

In addition, we note that "[t]he issue of subject matter jurisdiction may be raised at any time." Macysyn v. Hensler, 329 N.J. Super. 476, 481 (App. Div. 2000). It was appropriate for the court to address the jurisdictional question of whether the Act precluded it from hearing Crosslink's claims prior to the start of trial.

## III.

"As a general principle, [c]ollateral estoppel is that branch of . . . res judicata which bars relitigation of any issue which was actually determined in a prior action[.]" In re Liquidation of Integrity Ins. Co., 214 N.J. 51, 66 (2013) (quoting Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 114 (2011)). For the doctrine to apply,

> the party asserting the bar must show that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior

9

proceedings issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

[Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006) (quoting In re Estate of Dawson, 136 N.J. 1, 20-21 (1994)).]

Collateral estoppel is distinguishable from res judicata in "that it alone bars relitigation of issues in suits that arise from different causes of action." Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173 (App. Div. 2000). "[R]es judicata applies when either party attempts to relitigate the same cause of action. Collateral estoppel applies when either party attempts to relitigate facts necessary to a prior judgment." T.W. v. A.W., 224 N.J. Super. 675, 682 (App. Div. 1988). Application of collateral estoppel to bar a plaintiff's claims presents an "issue of law 'to be determined by a judge in the second proceeding after giving appropriate weight to the factors bearing upon the issue.'" Selective Ins., 327 N.J. Super. at 173.

Crosslink's reliance on collateral estoppel is misplaced, given that the doctrine applies where a final substantive decision is made by a court in a prior proceeding. Here, Crosslink argues that the court's own interlocutory orders

denying defendants' first two motions are the basis on which it is entitled to collateral estoppel. The doctrine does not apply in these circumstances.

IV.

We review the trial court's decision granting summary judgment de novo, using "the same standard that governs trial courts in reviewing summary judgment orders." Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). Rule 4:46-2(c) provides that a court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." "Thus, the movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'; a non-movant will be unsuccessful 'merely by pointing to any fact in dispute.'" Prudential, 307 N.J. Super. at 167 (quoting Brill v. Guardian Life Ins. Co., 142 N.J. 520, 529-30 (1995)). Our review is "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill, 142 N.J. at 523.

It is a violation of the Act to "[o]pen, conduct, or maintain, either directly or indirectly, an employment agency or perform any of the functions of an

employment agency without first obtaining a valid employment agency license[.]" N.J.S.A. 34:8-52(a). In addition,

> [a] person shall not bring or maintain an action in any court of this State for the collection of a fee, charge or commission for the performance of any of the activities regulated by this act without alleging and proving licensure or registration, as appropriate, at the time the alleged cause of action arose.
>
> [N.J.S.A. 34:8-45(b).]

The Act covers both "Consulting firm[s]" and "Employment agenc[ies]." N.J.S.A. 34:8-43.

> "Employment agency" means any person who, for a fee, charge or commission: (1) [p]rocures or obtains, or offers, promises or attempts to procure, obtain, or assist in procuring or obtaining employment for a job seeker or employees for an employer; or (2) [s]upplies job seekers to employers seeking employees on a part-time or temporary assignment basis who has not filed notification with the Attorney General . . . ; or . . . (4) [a]cts as a placement firm, career counseling service, or resume service[.]
>
> [Ibid.]

"[T]he Legislature's primary purpose in adopting the [Act] was to regulate the conduct of all employment agencies providing services to New Jersey employees and employers." Accountemps Div. of Robert Half of Philadelphia, Inc. v. Birch Tree Group, Ltd., 115 N.J. 614, 623 (1989). "The Act is a

regulatory measure intended to alleviate abuses in the employment-agency industry. With this remedial purpose in mind, the Legislature required the licensing of all entities that 'perform any of the functions of an employment agency.'" Ibid. (quoting N.J.S.A. 34:8-26).

When determining whether the Act applies, the totality of the entity's conduct is considered. Data Informatics, Inc. v. Amerisource Partners, 338 N.J. Super. 61, 76 (App. Div. 2001) (finding plaintiff to be an employment agency because it "arranged [an] interview" with another entity, "supplied" the employee to the other entity, "and was compensated based on a percentage of [the employee's] wages"); see also Insight Global, LLC v. Collabera, Inc., 446 N.J. Super. 525, 526 (Law Div. 2015) (finding plaintiff to be an employment agency when it provided "temporary employees to its clients on both long-term and short-term bases"); Logic Planet, Inc. v. Uppala, 442 N.J. Super. 488, 490 (Law Div. 2015) (finding plaintiff, "a company specializing in the placement of information technology . . . consultants" to be an employment agency).

Our review of the record in light of the unequivocal language of the Act leads us to affirm the trial court's grant of summary judgment to defendants. It is undisputed that Crosslink is not, and never has been, registered or licensed under the Act. It argues that it does not fall under the Act because it did not

"procure" or "obtain" employment for job-seekers or employees. Crosslink contends Amirit sold its T-Mobile work orders to Atlanta Trading and that its shift of employees to that entity was ancillary to the main purpose of the transaction.

However, the record contains ample evidence that Amirit entered into an employment placement agreement with Atlanta Trading after its business relationship with T-Mobile had been terminated. We agree with the trial court's conclusion that Crosslink's

> assertion that [it] was merely collecting fees from [Atlanta Trading's] purchase of Amirit's account with T-Mobile was disingenuous. Crosslink was specifically collecting fees for the provision of employment services to [Atlanta Trading] from Amirit. [Crosslink's] attempts to sequester the collection of fees from the reasons the fees were owed is illogical. Crosslink's right to fees arose out of employment services provided by Amirit to [Atlanta Trading].

We also disagree with Crosslink's argument that because neither it nor Amirit "routinely" provided employment agency services, Crosslink is not subject to the Act. The record contains Crosslink's admission that ten percent of its revenue comes from the "placement of employees" and its arrangement with Atlanta Trading was to continue as long as any of the employees remained at T-Mobile.

14

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5548-16T2