742 A.2d 1007 (2000)
327 N.J. Super. 168
SELECTIVE INSURANCE COMPANY, Plaintiff-Respondent,
v.
Donna McALLISTER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 6, 1999.
Decided January 6, 2000.
*1009 Scarinci & Hollenbeck, Secaucus, for defendant-appellant (John P. Libretti, of counsel; Maura Johnson Kimball, on the brief).
Maloney and Katzman, Parsippany, for plaintiff-respondent (Robert A. Maren, on the brief).
Before Judges KING, CARCHMAN and LEFELT.
*1008 The opinion of the court was delivered by CARCHMAN, J.A.D.
Defendant Donna McAllister was injured when the vehicle which she was driving was struck in the rear by a police patrol car. She made a claim for PIP coverage under her automobile insurance policy issued by plaintiff Selective Insurance Company. Pursuant to the policy, plaintiff paid defendant $44,739 for medical expenses, wage loss and essential services. Approximately eighteen months after defendant filed her claim, a claims adjuster noted that one of the submitted medical bills had been altered. Further investigation revealed that defendant altered other medical bills, submitted false invoices and received reimbursements for treatments she did not receive. Moreover, surveillance of defendant established that she was actively working in her own cleaning service and was fully capable of taking care of herself and her home during the time that she claimed she was disabled, unable to work and in need of essential services benefits.
The policy issued by plaintiff to defendant contains the following language:
We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.
Plaintiff promptly filed a civil action pursuant to the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 to -30, seeking to recoup the benefits previously paid to defendant.
Plaintiff then filed a criminal complaint against defendant charging theft by deception in excess of $500, N.J.S.A. 2C:20-4. Defendant was indicted, tried by a jury, convicted of third-degree theft by deception and sentenced to two years probation, restitution in the amount of $511, a $50 violent crimes compensation penalty and a $75 Safe Neighborhood Fund Penalty. Defendant appealed her conviction, challenging the denial of her pretrial intervention application as well as asserting the misuse of criminal process. We affirmed. State v. McAllister, A-6698-95T5 (App. Div. Mar. 13, 1998). Notwithstanding the conviction, plaintiff neither voided nor canceled defendant's policy and continues to provide automobile insurance coverage to defendant.
Following the affirmance of the criminal conviction, plaintiff moved for summary judgment in the civil case asserting that the judgment of conviction in the criminal case precluded defendant from relitigating the issue of fraud. The trial judge, relying on the doctrine of res judicata and the Supreme Court's decision in Longobardi v. Chubb Insurance Co., 121 N.J. 530, 582 A.2d 1257 (1990), held that the criminal conviction was dispositive and entered judgment in favor of plaintiff for $44,739, together with $15,495.85 in prejudgment interest. No proofs were provided which established any fraudulent submission in excess of the $511, apparently proven at the criminal trial. Because we conclude that there was a genuine issue of material fact not adjudicated in the criminal proceedings, we reverse and remand for trial.
The doctrine of res judicata "contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation." Lubliner v. Board of Alcoholic Beverage Control, 33 N.J. 428, 435, 165 *1010 A.2d 163 (1960). Reliance on the theory of res judicata requires:
(1) a final judgment by a court of competent jurisdiction,
(2) identity of issues,
(3) identity of parties and
(4) identity of the cause of action. [T.W. v. A.W., 224 N.J.Super. 675, 682, 541 A.2d 265 (App.Div.1988).]
The application of res judicata is a question of law "to be determined by a judge in the second proceeding after weighing the appropriate factors bearing upon the issue." Colucci v. Thomas Nicol Asphalt Co., 194 N.J.Super. 510, 518, 477 A.2d 403 (App.Div.1984). We abbreviate our analysis of the doctrine of res judicata because we conclude that there was neither identity of parties nor identity of issues warranting the application of that doctrine. That does not end the inquiry because proper focus should have fixed on the doctrine of collateral estoppel and whether that doctrine applies here.
"`The doctrine of collateral estoppel is a branch of the broader law of res judicata which bars relitigation of any issue actually determined in a prior action generally between the same parties and their privies involving a different claim or cause of action.'" Figueroa v. Hartford Ins. Co., 241 N.J.Super. 578, 584, 575 A.2d 888 (App.Div.1990) (quoting New Jersey Mfrs. Ins. Co. v. Brower, 161 N.J.Super. 293, 297-98, 391 A.2d 923 (App.Div.1978)). Although collateral estoppel overlaps with and is closely related to res judicata, the distinguishing feature of collateral estoppel is that it alone bars relitigation of issues in suits that arise from different causes of action. United Rental Equip. Co. v. Aetna Life and Cas. Ins. Co., 74 N.J. 92, 101, 376 A.2d 1183 (1977). As in the case of res judicata, the application of collateral estoppel is an issue of law to be determined by a judge in the second proceeding after giving appropriate weight to the factors bearing upon the issues. Colucci, 194 N.J.Super. at 518, 477 A.2d 403.
In order for the doctrine to apply, the party asserting the bar must show:
(1) the issue to be precluded is identical to the issue decided in the prior proceeding;
(2) the issue was actually litigated in the prior proceeding;
(3) the court in the prior proceeding issued a final judgment on the merits;
(4) the determination of the issue was essential to the prior judgment; and
(5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
[In re Estate of Dawson, 136 N.J. 1, 20, 641 A.2d 1026 (1994) (citations omitted).]
In Pivnick v. Beck, 326 N.J.Super. 474, 741 A.2d 655 (App.Div.1999), we restated additional considerations relevant to the application of collateral estoppel and noted that the doctrine must be "`applied equitably not mechanically.'" Id., 326 N.J.Super. at 485, 741 A.2d 655 (quoting In re Tenure Hearing of Tanelli, 194 N.J.Super. 492, 497, 477 A.2d 394 (App. Div.), certif. denied, 99 N.J. 181, 491 A.2d 686 (1984)). We continued "that it should only be applied where fairness requires such application." Id., 326 N.J.Super. at 485, 741 A.2d 655; see also State v. Gonzalez, 75 N.J. 181, 191, 380 A.2d 1128 (1977). In sum, the doctrine is not subject to rigid application but may be applied after a careful assessment and consideration of all relevant factors both in support of and against its application. As we identified in Pivnick:
Some of the factors favoring application of issue preclusion are: conservation of judicial resources; avoidance of repetitious litigation; and prevention of waste, harassment, uncertainty and inconsistency. Gonzalez, supra, 75 N.J. at 190, 193, 380 A.2d 1128. In contrast, factors disfavoring application of collateral estoppel include: the party against whom preclusion was sought could not have obtained review of the judgment in the initial action; the quality or extensiveness *1011 of the procedures in the two actions were different; it was not foreseeable at the time of the initial action that the issue would arise in subsequent litigation; and the party sought to be precluded did not have an adequate opportunity to obtain a full and fair adjudication in the first action. Restatement (Second) of Judgments § 278 (1980).
We conclude that as to the $511 proven at the criminal trial, there is no doubt that defendant cannot challenge nor dispute plaintiff's right under the policy to deny coverage as to that amount. With regard to the balance of benefits paid under the policy and the application of collateral estoppel to that amount, which exceeds $44,000, we reach a different result.
We recognize that the insurance policy appears on its face to preclude any coverage in the event of a fraudulent submission. However, the statute which supports this cause of action, the New Jersey Insurance Fraud Prevention Act, N.J.S.A. 17:33A-1 to -30, requires that the "false or misleading information concerning any fact or thing [be] material to the claim." N.J.S.A. 17:33A-4(a)(1)[1] (emphasis added).
The language of the policy, while not explicit, implicitly requires materiality as it requires a showing of "fraudulent statements." Fraud consists of "`a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely [on the misstatement], resulting in reliance by that party to his detriment.' " United Jersey Bank v. Kensey, 306 N.J.Super. 540, 550, 704 A.2d 38 (App. Div.1997), certif. denied, 153 N.J. 402, 709 A.2d 795 (1998) (alteration in original) (emphasis added) (citations omitted).
Defendant was convicted in the criminal trial of third-degree theft by deception, N.J.S.A.2C:20-4. That proceeding required the State to establish the elements of the charged offense which included 1) a misrepresentation made by a defendant; 2) the misrepresentation must be knowing and made with the specific intent to cheat or defraud; 3) the aggrieved party must rely on the misrepresentation in parting with his property; and, 4) defendant must receive something of value as a result of the misrepresentation. State v. Cox, 150 N.J.Super. 599, 604, 376 A.2d 236 (Law Div.1977), aff'd o.b., 160 N.J.Super. 28, 388 A.2d 1272 (App.Div.1978). Nowhere does the criminal statute speak to the issue of "materiality" as an element of the offense. See Cannel, New Jersey Criminal Code Annotated, comment 2 on N.J.S.A. 2C:20-4 (1999) (quoting 1971 Commentary, par. 2) (If the deception is effective to cause the victim to part with property, it is in general no defense that a reasonable person would not have been misled, or that the deception was as to something not "material," or that other influences also contributed to the victim's decision.... "Materiality... [is] not required in New Jersey.").
In our view, the question of materiality of the alleged fraudulent submissions is for the jury in the civil trial to determine. First, as to whether the submission of $511 of a $44,000 claim violated the fraud provision of the policy and second, if not, whether additional fraudulent *1012 submissions were made which would justify barring defendant from recovering legitimate expenses properly incurred and warranted by medical treatment resulting from the accident. This is a factual inquiry which cannot be resolved on the record below and on a criminal conviction for a theft of $511. In sum, this issue was neither identical to nor adjudicated in the criminal proceeding and precludes the application of collateral estoppel.
In Longobardi v. Chubb Insurance Co., the Supreme Court held that "[f]or an insurer to void a policy because of a post-loss misrepresentation, the misrepresentation must be knowing and material." 121 N.J. 530, 540, 582 A.2d 1257 (1990). Following the rationale of the Second Circuit in Fine v. Bellefonte Underwriters Insurance Co., 725 F.2d 179, 183 (2d Cir.), cert. denied, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 162 (1984), the Court held that "[a]n insured's misstatement is material if when made a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action." Longobardi, 121 N.J. at 542, 582 A.2d 1257.
In Longobardi, plaintiff made misrepresentations to the insurer regarding his relationship with two individuals suspected of insurance fraud. These individuals were involved in the preparation of appraisals of plaintiff's art collection with respect to his prior insurance coverage for the collection. The insurer had issued a policy to plaintiff insuring the art collection but denied payment based upon plaintiff's misrepresentation in his application and in the insurer's investigation of the subject loss. At trial, the jury found that plaintiff knowingly made a material false statement during his examination under oath or in his written statement "`in an effort to or for the purpose of hindering, deflecting or misleading defendant in the course of its investigative process.'" Id. at 543, 582 A.2d 1257. Based upon this finding, the trial judge dismissed plaintiff's complaint. We reversed; however, the Supreme Court again reversed concluding that the representation must be material and may include a post-loss misrepresentation as is alleged here.
In a later opinion clarifying Fine v. Bellefonte Underwriters Insurance Co., supra, on which our Supreme Court relied in deciding Longobardi, the Second Circuit, in Pacific Indemnity Co. v. Golden, 985 F.2d 51 (2d Cir.1993), held that materiality must be seen in the context of whether the misstatement would have affected the investigation. Id. at 56. The court found that an issue of fact existed on whether insurance misrepresentations were material. There, the fire claim submitted to the insurer involved damages in excess of two million dollars. During the initial claim investigation, the insured explained that the large volume of gasoline he had stored in trash cans was for use with snowmobiles. Later, he conceded in examination under oath that his initial answer had been false and that he had intended to use the gasoline to kill his neighbor's lawn. Apparently, the insured and his neighbor had engaged in ongoing disputes and litigation with each other, and in fact, the neighbor was suspected of having set the fire. The court reversed the summary judgment for the insurer and held that a jury must decide whether the initial misrepresentation was material, emphasizing that the insurer failed to show that there was no material question of fact demonstrating that its investigation would have proceeded differently had the insured initially given his true reason for storing the gasoline at his house. Specifically, "there [was] insufficient evidence in the record to determine whether [plaintiff's] misrepresentations either affected defendant's `attitude and action' or discouraged, misled or deflected its investigation." Id. at 57.
In this case, the trial judge stated, "there is no question that the defendant made a material misrepresentation to the plaintiff regarding her PIP claim." We agree with that observation but only as to the $511 established at the criminal trial. As to the balance, Fine and Longobardi *1013 make clear that materiality generally is a question of fact to be determined by a jury. Certainly here it is a question of fact as to the balance of funds in dispute. The jury must assess, as an element of materiality, whether plaintiff would have changed its course of action in assessing the claims upon learning of the fraudulent conduct. In this regard, we note, without passing on its impact on the ultimate issue to be determined by the jury, that plaintiff still insures defendant, still collects premiums and, in spite of her established fraudulent conduct ($511) would presumably pay legitimate claims in the future. At trial, plaintiff may, of course, prove that any additional submissions were fraudulent in an effort to establish its cause of action under the policy or the statute. Cf. Merin v. Maglaki, 126 N.J. 430, 599 A.2d 1256 (1992).
Reversed and remanded for trial.
NOTES
[1] The relevant provisions of the New Jersey Insurance Fraud Prevention Act provide: (a) A person or a practitioner violates this act if he:

(1) Presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy ... knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or
(2) Prepares or makes any written or oral statement that is intended to be presented to any insurance company ... or in support of or opposition to any claim for payment or other benefit pursuant to an insurance policy ... knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim.