**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2839-17T2

FRANK G. RUBURY,

    Plaintiff-Appellant,

v.

FORD MOTOR COMPANY,

    Defendant-Respondent.

_____

> Submitted February 7, 2019 – Decided March 6, 2019
>
> Before Judges O'Connor and DeAlmeida.
>
> On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2609-17.
>
> Frank G. Rubury, appellant pro se.
>
> Dobis, Russell & Peterson, PC, attorneys for respondent (James S. Dobis, on the brief).

PER CURIAM

    Plaintiff Frank G. Rubury appeals from the October 17, 2017 order of the

Law Division dismissing his complaint against defendant Ford Motor Company

(Ford) and the January 16, 2018 order denying his motion for reconsideration. We affirm.

I.

The following facts are derived from the record. On May 29, 2014, Rubury was in a motor vehicle accident while operating a car manufactured by Ford. Rubury alleges the airbags in the vehicle failed to deploy, causing him serious physical injuries. This appeal arises from the dismissal of the last of three complaints filed by Rubury against Ford relating to the accident.[1]

Six months after the accident, on November 25, 2014, Rubury called Ford's customer assistance center to report the accident and demand damages. On December 2, 2014, a Ford legal analyst wrote to Rubury to deny his demand for damages because he had received payment for the car, which had been totaled, and medical expenses from his insurance carrier. Rubury replied by email that he was seeking damages beyond those he recovered from his insurance carrier.

On December 3, 2014, the legal analyst wrote to Rubury requesting information relating to the accident. On February 23, 2015, the legal analyst

_____

[1] We recently affirmed the dismissal of a fourth complaint, in which Rubury alleged medical malpractice claims relating to his treatment after the accident. Rubury v. RWJ Univ. Hosp., No. A-4453-16 (App. Div. Jan. 10, 2019).

again wrote to Rubury to advise him that in order to conduct an accurate evaluation of his claim, Ford would need to inspect the vehicle's restraint control module (RCM), a component related to the airbag system.

On May 8, 2015, Rubury wrote to the legal analyst advising him that after his insurance carrier took possession of the car, ownership was transferred a number of times. According to Rubury, Jonestown Auto Center purchased the car and had it, and the RCM, shredded "near the end of 2014." Rubury demanded $502,451.87 and a replacement vehicle.

On May 15, 2015, Ford denied Rubury's claim because it could not examine the RCM. On May 28, 2015, Rubury responded with a demand for $502,451.87 and a replacement car. Rubury identified himself as a "published writer," and stated that if Ford did not send him cash or a certified check by June 30, 2015, he would, among other things, write articles for named publications detailing the airbag failure and Ford's refusal to accede to his financial demands.

On September 15, 2015, Rubury filed a complaint in the Law Division against Ford. In two counts, Rubury sought damages caused by the crash, including pain, suffering, loss of income, loss of employment, and a decline in his credit worthiness. In a third count, Rubury alleged Ford was grossly negligent for not advising him in the December 3, 2014 letter to preserve the

A-2839-17T2

RCM, resulting in its spoliation, for which he demanded $5 million in punitive damages.

Ford filed a motion to dismiss the complaint for failure to state a claim on which relief can be granted. See R. 4:6-2(e). In support of the motion, Ford filed a brief arguing

> [t]he entire premise of Plaintiffs' lawsuit has been mooted by Ford's counsel's investigation after the lawsuit was filed, which determined that the RCM was removed from the vehicle by Jonestown Auto Center. In fact, Jonestown Auto Center also advised that the vehicle itself was not shredded but remains on the "pile" at the premises of Jonestown Auto Center. Jonestown Auto Center further advised that the vehicle was compacted or crushed but has not been shredded.

On December 28, 2015, prior to oral argument on Ford's motion, its counsel sent Rubury the following email:

> In view of the delays in Ford's motion I would like to make arrangements to inspect and make arrangements with Jonestown Auto Center and ship the RCM to Ford in Michigan so Ford can download the RCM. Please advise [if] you would like to attend the inspection, or if you have any objection to this.

The following day, Ford's counsel followed up with another email to Rubury:

> [T]o follow up on my email yesterday, I plan to inspect the RCM tomorrow at 11a.m. at Jonestown Auto and arrange to have them fed ex the RCM to Ford in Michigan for analysis. I left a message . . . this morning on your cell phone as well.

4

Rubury responded in an email communication that day:

> I am considering attending. Will advise later today. Please send me your cell number in the event it is after hours.

Rubury did not attend the inspection.

On January 28, 2016, the trial court dismissed the complaint for failure to state a claim on which relief can be granted. The court concluded that Ford did not have a duty to advise Rubury of his legal rights and duties, including his obligation to preserve evidence he believed supported his legal claims against Ford. In addition, the court concluded that Rubury had a duty to take the steps necessary to preserve the vehicle and its component parts if he was contemplating legal action against Ford. The court concluded Rubury was responsible for the spoliation of the RCM. The court found that inspection of the RCM near the time of the accident was critical to determining the validity of Rubury's claims, and concluded that because Rubury denied Ford the opportunity to inspect the RCM before it was removed from the vehicle, Ford had "no independent source of evidence or testimony sufficient to permit [it] to mount a defense," warranting dismissal of the complaint.

On March 18, 2016, the trial court denied Rubury's motion to vacate the order dismissing his complaint. The court concluded that "at best" Rubury

disagreed with the trial court's opinion, and asserted arguments appropriately addressed on appeal. Rubury did not file an appeal.

On May 17, 2016, Rubury filed a second complaint against Ford in the Law Division. The second complaint, which also named a Ford dealership as a defendant, set forth the same claims alleged in the first complaint.

On January 5, 2017, the trial court dismissed Rubury's second complaint as barred by the doctrines of collateral estoppel and res judicata.[2] Rubury did not appeal the order dismissing the second complaint.

On August 8, 2017, Rubury filed a third complaint against Ford in the Law Division. The complaint reiterates Rubury's allegation that Ford is responsible for spoliation of the RCM because it did not advise Rubury to preserve the RCM in its December 3, 2014 letter. In addition, Rubury alleges Ford committed fraud when, during oral argument on its motion to dismiss the first complaint, its counsel did not disclose that Ford was in possession of the RCM.

On October 17, 2017, the trial court dismissed the third complaint for failure to state a claim on which relief can be granted. The court concluded that "[t]hese claims have been considered [and] dismissed by" the trial court which

---

[2] On October 28, 2016, the trial court dismissed the complaint against the dealership pursuant to N.J.S.A. 2A:58C-9.

dismissed Rubury's first complaint and to "the extent there are any additional claims, they are precluded by the entire controversy doctrine."

On January 16, 2018, the trial court denied Rubury's motion for reconsideration.[3] This appeal followed.

## II.

We apply a de novo standard of review to a trial court's order dismissing a complaint under Rule 4:6-2(e). See Stop & Shop Supermarket Co. v. Cty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017) (quoting Teamsters Local 97 v. State, 434 N.J. Super. 393, 413 (App. Div. 2014)). "[O]ur inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). "A pleading should be dismissed if it states no basis for relief and discovery would not provide one." Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 113 (App. Div. 2011).

Even under the most indulgent reading, Rubury's third complaint does not allege a cause of action on which relief can be granted. Plaintiff failed to cite any law in support of his claim Ford is liable under these circumstances.

---

[3] Although the order denying Rubury's motion for reconsideration is dated December 15, 2017, it was not entered until January 16, 2018.

A-2839-17T2

We also agree with the trial court that Rubury's third complaint alleges claims barred by res judicata and collateral estoppel. "The application of res judicata is a question of law . . . ." Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173 (App. Div. 2000). Thus, we review its application de novo. Walker v. Choudhary, 425 N.J. Super. 135, 151 (App. Div. 2012). "The term 'res judicata' refers broadly to the common-law doctrine barring relitigation of claims or issues that have already been adjudicated." Velasquez v. Franz, 123 N.J. 498, 505 (1991). "[T]he doctrine of res judicata provides that a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be relitigated by those parties or their privies in a new proceeding." Ibid.

> To decide if two causes of action are the same, the court must determine: (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.
>
> [Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 606-07 (2015) (quotation omitted).]

8

"The doctrine of collateral estoppel . . . bars relitigation of any issue actually determined in a prior action generally between the same parties and their privies involving a different claim or cause of action." Selective Ins. Co., 327 N.J. Super. at 173 (quotation omitted). For the collateral estoppel doctrine to apply, a party must show that:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006) (quoting In re Estate of Dawson, 136 N.J. 1, 20 (1994)).]

In his first complaint, Rubury alleged that Ford was responsible for the spoliation of the RCM. The trial court concluded that Ford's inability to examine the RCM immediately after the accident was the result of Rubury's failure to preserve evidence he believed was relevant to his claim. Rubury allowed his insurance carrier to take possession of the vehicle, title to which was transferred a number of times. Having waited six months to contact Ford, Rubury, once informed of Ford's need to inspect the RCM, discovered the car was in the possession of a junkyard. It was later discovered that the RCM had been

9

removed by an employee of the junkyard, likely compromising its integrity and usefulness as evidence of Rubury's claim. As a result, the trial court concluded that Rubury should be held responsible for the spoliation of the RCM, not Ford, and that dismissal of his claims was warranted.

If Rubury was not satisfied with that conclusion, he had the opportunity to file an appeal. He instead filed two additional complaints raising the claim already resolved by the trial court in the first matter: that Ford is responsible for not preserving the RCM. Rubury's third complaint, the dismissal of which is before this court on appeal, was barred by res judicata and collateral estoppel.

Nor do we see grounds for reversal of the January 16, 2018 order denying Rubury's motion for reconsideration. Rule 4:49-2 provides:

> Except as otherwise provided by R. 1:13-1 (clerical errors) a motion for rehearing or reconsideration seeking to alter or amend a judgment or order shall . . . state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred, and shall have annexed thereto a copy of the judgment or order sought to be reconsidered and a copy of the court's corresponding written opinion, if any.

"A motion for reconsideration . . . is a matter left to the trial court's sound discretion." Lee v. Brown, 232 N.J. 114, 126 (2018) (quoting Guido v. Duane Morris, LLP, 202 N.J. 79, 87 (2010)). A party may move for reconsideration of

a court's decision pursuant to <u>Rule</u> 4:49-2, on the grounds that (1) the court based its decision on "a palpably incorrect or irrational basis," (2) the court either failed to consider or "appreciate the significance of probative, competent evidence[,]" or (3) the moving party is presenting "new or additional information . . . which it could not have provided on the first application[.]" <u>Cummings v. Bahr</u>, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting <u>D'Atria v. D'Atria</u>, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990)). The moving party "must initially demonstrate that the [c]ourt acted in an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." <u>D'Atria</u>, 242 N.J. Super. at 401.

Rubury's brief does not cite <u>Rule</u> 4:49-2, or any legal precedent interpreting it. He makes no colorable argument that reconsideration was appropriate, and we see nothing in the record suggesting the trial court erred in denying his motion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2839-17T2