**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2561-18T3

JESSE ROSENBLUM,

    Plaintiff-Appellant,

v.

BOROUGH OF CLOSTER,
JOSEPH MIELE, and GLORIA
MIELE,

    Defendants-Respondents.

_____

Submitted June 3, 2020 – Decided July 15, 2020

Before Judges Whipple and Gooden Brown.

On appeal from the Tax Court of New Jersey, Docket Nos. 013368-2016, 013191-2017, and 013096-2018.

Jesse Rosenblum, appellant pro se.

Edward Rogan & Associates, LLC, attorneys for respondent Borough of Closter (Edward T. Rogan, of counsel and on the brief; Celia Susan Bosco, on the brief).

Kathryn Ann Gilbert, attorney for respondents Joseph and Gloria Miele, joins in the brief of respondent Borough of Closter.

PER CURIAM

Plaintiff Jesse Rosenblum appeals from a January 3, 2019 Tax Court order dismissing with prejudice his third-party tax appeals against defendants Borough of Closter (Borough), Joseph Miele, and Gloria Miele (collectively, Mieles) for the years 2016, 2017, and 2018. We affirm.

Plaintiff is a third-party taxpayer in the Borough. Defendants the Mieles own a nine-acre property in the Borough, which they bought in 1983. The Mieles breed llamas who are free to roam on their entirely-fenced-in property. A stream runs along a section of their property, and 5.57 acres of the property, along a main road, is used as pasture for the Mieles' llamas. The property is partly wooded and provides the llamas with shade, cover, and leaves for food.

The Mieles applied for farmland tax assessment based on their use of the property to breed llamas. The farmland tax assessment is granted to qualifying properties under the Farmland Assessment Act of 1964 (the Act), N.J.S.A. 54:4-23.1 to -23.23, which was enacted with the goal of providing farmers with some economic relief by permitting farmlands to be taxed at a lower rate. 22 N.J.

§ 15.10 (Raymond I. Korona) (5th ed. 2020 update). N.J.S.A. 54:4-23.2 provides, in pertinent part:

> the value of land, not less than [five] acres in area, which is actively devoted to agricultural or horticultural use and which has been so devoted for at least the [two] successive years immediately preceding the tax year in issue, shall, on application of the owner, and approval thereof as hereinafter provided, be that value which such land has for agricultural or horticultural use.

Eligibility for farmland valuation, assessment, and taxation is determined for each year separately. Korona, § 15.10. Land is deemed to be in agricultural use when it is devoted to production for sale of plants and animals useful to man, which includes breeding and grazing of such animals, and where gross sales of agricultural products equal a statutorily prescribed amount per year. Ibid. (citing N.J.S.A. 54:4-23.3). The land also must not be less than five acres, and the burden of proving the land is actively devoted to agricultural use lies with the landowner. Hovbilt, Inc. v. Township of Howell, 138 N.J. 598, 620 (1994) (citing N.J.S.A. 54:4-23.6(b)). The statute is focused "exclusively on the actual use of the property," and is separate from zoning and other laws. "Nothing in the Act requires the taxpayer affirmatively to prove the legality of the use of the property," however, the Act provides entitlement to a farmland assessment when the prerequisites of actual agricultural use is maintained for a sufficient period

of time and there is a sufficient average income from that use. Byram Twp. v. Western World, Inc., 111 N.J. 222, 236 (1988).

If the owner provides sufficient proof to satisfy the criteria listed in N.J.S.A. 54:4-23.6, the tax assessor is required to value the land as farmland, and "may use his or her 'personal knowledge, judgment and experience as to the value of land in agricultural . . . use.'" Hovbilt, 138 N.J. at 620 (quoting N.J.S.A. 54:4-23.7). In other words, the duties of the tax assessor are to determine: (1) if the land is actively devoted to agricultural use, and (2) whether the other statutory criteria have been met. Id. at 621. If so, the assessor must value the land, which necessarily implicates the assessor's opinion and judgment. Ibid.

On appeal, the municipality's tax assessment is presumptively valid, and the appealing taxpayer has the burden of proving the assessment is erroneous by providing cogent evidence that is "definite, positive and certain in quality and quantity to overcome the presumption." Pantasote Co. v. City of Passaic, 100 N.J. 408, 412-13 (1985) (citations omitted). Even where the assessment methodology used by the assessor was incorrect, the presumption of validity will still attach "absent any strong indication arising from the evidence properly before the Tax Court that the quantum of the assessment was far wide of the mark of true value." Id. at 414-15.

A-2561-18T3

Plaintiff has contested the Mieles' farmland assessment as a third-party taxpayer almost yearly since 1991. However, based upon our review of the record, this appeal which challenges the Mieles' 2016, 2017, and 2018 farmland assessments is wholly a re-visitation of the issues previously addressed in those earlier challenges.

On September 26, 2018, the Mieles moved to dismiss the 2016-2017 complaints, based on res judicata, collateral estoppel, and the entire controversy doctrine. They alleged "incessant, vexatious litigation" on the part of plaintiff, and asserted all claims were predicated on "the core allegation that, because the Mieles' property contains trees and a stream, it was woodland" and could not be used as pasture. That issue was heard and adjudicated by the Tax Court in a 1999 trial, which was affirmed by this court, and in April 2016 the Tax Court ruled against plaintiff's 2014 and 2015 complaints pursuant to Rule 4:37-2(b), which we also affirmed. The Tax Court consolidated the 2016 and 2017 tax appeals, as well as a 2018 appeal plaintiff had filed in the interim.

The Tax Court determined plaintiff only contested the first factor under the farmland assessment eligibility requirement, that the land must be actively devoted to agricultural or horticultural use. Specifically, plaintiff argued that "wooded wetland, watercourses, upland woodland, and a shortfall of real

pasture" on defendants' property renders it incompatible with agricultural or horticultural use. The Tax Court found "[t]his is of course the same exact challenge on [defendants'] property that [plaintiff] has brought before this [c]ourt for nearly three decades now." Applying the principles of Hackensack v. Winner, 82 N.J. 1, 32-33 (1980), the Tax Court dismissed plaintiff's complaint noting the legal doctrines of collateral estoppel, issue preclusion, res judicata, and others encourage "finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness" where an issue between parties has been fairly litigated and determined.

The Tax Court found the Mieles demonstrated that collateral estoppel was appropriate noting the issue of whether the stream and many trees on the property disqualified it from farmland tax assessment was identical to the issue decided in the 1999, 2014, and 2015 lawsuits, which all revolved around the central allegation that the tax assessor improperly included woodlands and wetlands in the land she assessed as farmland. Plaintiff's current 2016, 2017, and 2018 lawsuits all involve this same allegation with no new material facts being presented. The Tax Court found the issue was actually litigated in prior

proceedings, plaintiff had the opportunity to litigate this issue in a full and fair trial on the merits in the 1999, 2014, and 2015 cases, and the issue was essential to the judgment.

Moreover, given that the final judgment upholding the assessment in the 1999 trial was affirmed by this court, and there were judgments dismissing the 2014 and 2015 complaints following the 2016 trial, which were also affirmed by this court, the Tax Court found the parties were fully heard over the course of two trials and that the court decisions were supported with reasoned opinions.

Finally, as to the party against whom the doctrine of res judicata is being asserted, the Tax Court found plaintiff was a party to the earlier proceedings, and the long string of cases involving plaintiff and defendants share identical parties, involve the same property, and are based on the same set of facts. Accordingly, the court granted defendants' motion to dismiss the complaint based on res judicata, collateral estoppel and the entire controversy doctrine. This appeal followed.

The application of res judicata and collateral estoppel are questions of law, Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173 (App. Div. 2000), which we review de novo, Kean Fed'n of Teachers v. Morell, 233 N.J. 566, 583 (2018).

Res judicata serves the purpose of providing finality, preventing needless litigation, avoiding duplication, reducing unnecessary time and expense burdens, eliminating conflicts and uncertainty, and promoting fairness. Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 606 (2015). Once a controversy between parties is "fairly litigated and determined it is no longer open to re[-]litigation." Ibid. (quoting Lubliner v. Bd. of Alcoholic Beverage Control, 33 N.J. 428, 435 (1960)). For res judicata to apply, however, there must be "substantially similar or identical causes of action and issues, parties, and relief sought" as well as a final judgment. Ibid. (quoting Culver v. Ins. Co. of North America, 115 N.J. 451, 460 (1989)). To decide whether two causes of action are the same, the court is to determine:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.
>
> [Id. at 606-07 (quoting Culver, 115 N.J. at 461-62).]

As for its application in tax proceedings, however, "res judicata can be used minimally in tax proceedings in view of the unavoidable effect of time on value." Gottdiener v. Township of Roxbury, 2 N.J. Tax 206, 215 (Tax Ct. 1981).

While res judicata precludes re-litigation of judgments, collateral estoppel precludes the re-litigation of issues. Brae Assocs. v. Park Ridge Borough, 17 N.J. Tax 187, 193 (Tax Ct. 1998) (citing Mazzilli v. Accident & Cas. Ins. Co., 26 N.J. 307 (1958); Allesandra v. Gross, 187 N.J. Super. 96 (App. Div. 1982)). "Although collateral estoppel overlaps with and is closely related to res judicata, the distinguishing feature of collateral estoppel is that it alone bars re-litigation of issues in suits that arise from different causes of action." Selective Insurance Co., 327 N.J. Super. at 173. Indeed, the doctrine of collateral estoppel is a "branch of the broader law of res judicata which bars re-litigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." Sacharow v. Sacharow, 177 N.J. 62, 75-76 (2003) (quoting Woodrick v. Jack J. Burke Real Estate, Inc., 306 N.J. Super. 61, 79 (1997)).

Collateral estoppel forecloses the re-litigation of an issue when the party asserting the bar demonstrates:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was

actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

[Hennessey v. Winslow Township, 183 N.J. 593, 599 (2005) (internal citations omitted) (quoting In re Estate of Dawson, 136 N.J. 1, 20-21 (1994)).]

In the context of tax law, "[s]ignificant authority exists permitting the use of collateral estoppel in local property tax cases without abridging a taxpayer's right to litigate its assessment on an annual basis." Brae Assocs., 17 N.J. Tax at 193 (citing Blair v. Dir., Div. of Taxation, 9 N.J. Tax 345, 349 (Tax Ct. 1987); Warren Twp. v. Suffness, 225 N.J. Super. 399, 408 (App. Div. 1988)). "The doctrine of collateral estoppel is generally applied against a taxpayer when he challenges the same kind of assessment that he previously challenged unsuccessfully when it had been levied for a prior period." Blair v. Dir., Div. of Taxation, 225 N.J. Super. 584, 586 (App. Div. 1988) (citing Bass River Twp. v. Hogwallow, Inc., 182 N.J. Super. 584, 585-86 (App. Div. 1982)).

Collateral estoppel "is not applied where there has been an intervening change in significant facts, or there has been an intervening change in the statutory, regulatory or judicial law that favors the taxpayer, or where there are 'other special circumstances [that] warrant an exception to the normal rules of

preclusion.'" Id. at 586-87 (alteration in original) (quoting Montana v. United States, 440 U.S. 147, 155 (1979)). This is because "it would be unfair to treat one taxpayer differently from others of the same class solely because he had once suffered an adverse determination when the facts or the law were different." Id. at 587. Nevertheless, "if the very same facts and no others are involved in the second case, relating to a different tax year, the prior judgment will be conclusive as to the same legal issues which appear, assuming no intervening doctrinal change." Ibid. (quoting Comm'r v. Sunnen, 333 U.S. 591, 598-602 (1948)).

Applying these principles, we agree with the conclusions of the Tax Court that dismissal was appropriate on the grounds of collateral estoppel because all of plaintiff's arguments are identical to the previous issues that were actually litigated with final judgments on the merits and the determinations were essential to the prior judgments as to the same parties. Specifically, plaintiff raises identical issues that have already been litigated such as the 1999 trial and judgment, where the Tax Court noted there was nothing the court found that prevented woodland to be pasture as it provided additional forage and feed, as well as an appropriate habitat; the 2009 litigation, where the Tax Court noted plaintiff's "new" challenge was still that the tax assessor did not follow

11

appropriate statutes for granting farmland assessment; and the 2016 trial where the assessor testified the trees had many benefits for farmland use as shade, cover, and as a food source.

Plaintiff has not asserted any intervening change in significant facts or statutory regulation or judicial law that favors him, thus we conclude collateral estoppel was appropriately applied. We do not address plaintiff's remaining arguments as they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION