**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2958-23

EBONNI S. SHAW and
ROBERT D. SHAW,

     Plaintiffs-Appellants,

v.

PALISADES PROPERTY AND
CASUALTY INSURANCE
COMPANY and SHULTS
INSURANCE AGENCY, INC.,

     Defendants-Respondents.

_____

Argued October 27, 2025 – Decided December 26, 2025

Before Judges Sabatino, Natali, and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-4892-20.

Raffi Momjian (Raffi Momjian, PC) argued the cause for appellants; Michael R. Perle (Michael Perle, LLC) attorney for appellants.

Walter F. Kawalec, III, argued the cause for respondents (Marshall Dennehey, PC, attorneys;

Walter F. Kawalec, III, and David D. Blake, on the brief).

PER CURIAM

In this insurance coverage dispute, plaintiffs Ebonni S. Shaw and Robert D. Shaw[1] appeal from the court's denial of their motion for judgment notwithstanding the verdict ("JNOV") entered in favor of defendant Palisades Property and Casualty Insurance Company ("Palisades"), insurers of the property in question, under Rules 4:40-2 and 4:49-1. Plaintiff principally argues the court erred in denying the motion for a JNOV and new trial because of the lack of competent evidence adduced at trial in support of the jury's verdict on the issue of "materiality." We affirm.

I.

The relevant facts are largely undisputed. In September 2017, plaintiffs purchased a multi-family property located on Peshine Avenue in Newark. To finance the purchase, plaintiff secured a mortgage and an additional construction loan of approximately $29,000 for renovations of the second and third floors.

---

[1] Although appellants are plaintiffs Ebonni Shaw and Robert Shaw, consistent with plaintiffs' brief, we adopt the use of the singular "plaintiff" to refer solely to Ebonni Shaw.

A-2958-23

In July 2017, plaintiff obtained homeowner's insurance for the property from defendant.

The relevant part of the application provides:

> 4. ANY OTHER RESIDENCE OWNED, OCCUPIED OR RENTED? . . . No [checked]
>
> . . . .
>
> ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [(NY: SUBSTANTIAL)] CIVIL PENALTIES. (Not applicable in CO, HI, MA, OH, OK, OR or VT; in DC, LA, ME, TN and VA, insurance benefits may also be denied.)
>
> . . . .
>
> Insured Residence Premises: [] PESHINE AVE, NEWARK, NJ 07112

The policy continues:

> "Residence premises" means:
>     a. The one family dwelling where you reside;
>     b. The two, three or four family dwelling where you reside in at least one of the

A-2958-23

family units; or
c. That part of any other building where you reside; and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

. . . .

"Insured location" means:

a. The "residence premises";
b. The part of other premises, other structures and grounds used by you as a residence; and (1) Which is shown in the Declarations; or (2) Which is acquired by you during the policy period for your use as a residence;
c. Any premises used by you in connection with a premises described in a. and b. above;
d. Any part of a premises; (1) Not owned by an "insured"; and (2) Where an "insured" is temporarily residing.

At the time of purchase, the first floor of the property was occupied by an existing tenant, Sharon Cherry. However, plaintiff hired a contractor to renovate the second and third floors. According to plaintiff, the initial contractor's work proved deficient, making the unit she sought to occupy uninhabitable. Plaintiff subsequently arbitrated claims against the initial contractor, which were

A-2958-23

resolved in November 2018. Thereafter, a different contractor completed the renovations to plaintiff's satisfaction.

On November 20, 2019, a fire caused extensive damage to the property. Subsequently, plaintiff filed an insurance claim with defendant. As part of its investigation, defendant inquired whether plaintiff lived on the property. Plaintiff reported that she resided on the property and as proof of her residency, she told defendant's investigator that she had purchased several new items of furniture from a national retailer and had them delivered to the property in October of 2017. She further told defendant's investigator that she lived there from October or September 2017 until May of 2019.

Approximately a year later, defendant's adjuster denied coverage and rescinded the homeowners' policy, citing misrepresentations from plaintiff regarding her use of the property in both the application and the post-loss investigation.

On July 21, 2020, plaintiffs filed a five-count complaint in the Law Division against defendant and their insurance broker, Shults Insurance Agency, Inc. ("Shults"), seeking coverage for the fire loss, punitive damages, and other relief. On January 20, 2022, plaintiffs and Shults settled and executed a stipulation of dismissal with prejudice.

5

At the conclusion of the discovery period, defendant moved for summary judgment, arguing that non-occupancy by the insured owner precluded coverage under the policy and N.J.S.A. 17:36-5.20.[2] The court denied defendant's motion, and the matter proceeded to a jury trial in March 2024 against Palisades as the sole defendant.

At trial, plaintiff testified that she acquired the building in September 2017, intending to occupy it as her primary residence as stated in her application for insurance coverage. She also testified she purchased several new items of

---

[2] N.J.S.A. 17:36-5.20 clarifies the "certain standard provisions" every fire insurance policy in the state must contain, and bars the insured from willfully, concealing, or misrepresenting "any material fact or circumstances concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." Among the minimum provisions for which the statute provides is that an insurance company "shall not be liable for loss occurring . . . while a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days . . . . "

Relying on these baseline provisions established in N.J.S.A. 17:36-5.20, the motion court concluded the policy issued by defendants was "more restrictive than [N.J.S.A.] 17:36-5.20 allows it to be." The motion court then concluded that non-occupancy by the insured owner did not automatically result in forfeiture of coverage because "[w]hether or not the occupant is an owner . . . or tenant is immaterial . . . to the interpretation of this statute[, N.J.S.A. 17:36-5.20]." Because the statute does not suspend or restrict insurance coverage when there is "occupancy by owner or tenant," the court held it was insufficient for Palisades to deny coverage if the home was tenant-occupied within sixty days of the loss, allowing the case to go to a jury trial. N.J.S.A. 17:36-5.20.

6

A-2958-23

furniture, including a bedroom set, and had her friends move those items into the premises. She explained she initially delayed moving onto the property due to necessary renovations to the unit she intended to occupy and that later her father became ill in the spring of 2019. She further testified that around the same time her father became ill, her brother required emergency surgery, causing her to remain with family as her mother "needed [her] help with the care of [her] father," and she wished to "be there as much as possible with [her] family at [their family home]." Plaintiff further explained that she eventually rented unit two—the one she intended to reside in—to Sharonda Eleazer beginning June 17, 2019, and Eleazer's son, Malik Freeman, later occupied the third floor under a July 9, 2019 lease, which she terminated in the fall of 2019.

In their own testimony, former tenants Cherry and Freeman contradicted plaintiff's testimony that she resided on the property at any time. In fact, they testified that plaintiff never lived on the property, nor occupied the second or third units, which they and their families solely occupied. They also denied plaintiff's claim she brought personal belongings onto the property. Cherry specifically disputed photographic evidence offered by plaintiff to show that she stored personal property in the second-floor unit, and Freeman denied ever being

A-2958-23

evicted from the property and testified he lived there between April 2020 and when the fire occurred.

Defendant's underwriting director, Elisa Lacoste, testified that defendant issues only owner-occupied homeowner policies in New Jersey and expects insureds to actually reside at the premises.

The jury returned a verdict for defendant. As to question number one on the verdict form: "Do you find that the [p]laintiff lived or resided at [] Peshine Avenue from September 2017 until May 2019?" The jury answered "No." With respect to question number two: "Did the [d]efendant establish that the [p]laintiff knowingly made misrepresentations in the application for insurance as of the date of the application, July 24th, 2017?" The jury answered "No." And, as to question number three: "[d]id the [d]efendant establish that the [p]laintiff made misrepresentations during the fire claim investigation and that the misrepresentations were material or reasonably relevant?" The jury answered "Yes."

Plaintiff moved for a JNOV and a new trial on damages, arguing defendant failed to introduce at trial any evidence on the essential element of "materiality" to sustain a prima facie defense of post-loss "misrepresentations" allegedly made

A-2958-23

by plaintiff. Following argument, the court denied plaintiffs' motions in an oral decision.

In its decision, the court first set forth the applicable standard, stating: "[t]he standard for determining a motion, or a [JNOV], [Rule] 4:40-2(b) is whether the evidence—legitimate inferences therefrom could sustain a judgment in favor of the party opposing the motion." Addressing the standard established in Dolson v. Anastasia, 55 N.J. 2, 6-7 (1969), the court next stated that the jury's factual determinations will only be disturbed if they find that the jury could not have reasonably used the evidence to reach its verdict, in addition highlighting that a jury's verdict is entitled to great deference.

The court further noted that:

> [Our Supreme Court] has held that [JNOVs] exist to correct a clear error or mistake by a jury, [and are] not a vehicle for the trial judge to substitute their judgment for that of the jury merely because he or she would have reached an opposite conclusion. . . .
>
> Rather a court must canvass the record not to balance the persuasiveness of the evidence on one side . . . but to determine whether [] minds might accept the evidence as adequate to support their jury verdict.

The court next examined the relevant areas of the instructions to the jury charge regarding post-loss misrepresentation wherein it stated:

9

> For an insurer to void a policy because of a post loss mis-representation[,] the mis-representation must be knowing and material. . . . A mere oversight or honest mistake will cost an[] insured his or her coverage. . . . A person acts knowingly as to a result of his or her conduct when he or she is aware that it is practically certain that the conduct will cause such a result.

The court rearticulated the definition of "material," stating "[m]aterial means, reasonably relevant to the insurance company's investigation at the time." And, the materiality requirement is satisfied if:

> . . . the false statement concerns a subject relevant and germane—if the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding. It is your responsibility to determine in what regard the subject of relevant and germane to the insurer's investigation. An insured's mis-statement is material if when made . . . a reasonable insurer would have considered the mis-represented fact relevant to its concerns and—in determining its course of action. You must determine how a mis-represented fact was relevant to the insurance company investigators based on the evidence. False answers are equally material if they may be said to have been calculated—and it goes on from there.

After reciting relevant aspects of the jury charge, the court examined the verdict sheet and concluded based on "the documentation, [and] the materials that are presented" that there was no basis to grant the motion. This appeal followed.

10

II.

Under Rule 4:40-2, a JNOV "cannot be entered unless a motion for judgment or its equivalent has been made during trial."  Velazquez ex rel. Velazquez v. Jiminez, 336 N.J. Super. 10, 33 (App. Div. 2000) (citing Surkis v. Strelecki, 114 N.J. Super. 595, 599-600 (App. Div. 1971); Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:40-1 and -2 (2026); see also Sun Source, Inc. v. Kuczkir, 260 N.J. Super. 256, 368 (App. Div. 1992) (holding that the defendant was "procedurally barred" from moving for JNOV because he "failed to move for judgment prior to the jury's verdict.").  If a party fails to move for judgment during trial, a motion for JNOV may still be sustainable where "an adequate substitute for the requisite trial motion" is made.  Spaulding v. Hussain, 229 N.J. Super. 430, 441-42 (App. Div.1988) (citing Menza v. Diamond Jim's, Inc., 145 N.J. Super. 40, 44 (App. Div. 1976)).

The standard for determining a motion for JNOV is the same as that governing a motion for involuntary dismissal under Rule 4:37-2(b) and a motion for judgment under Rule 4:40-1.  Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:40-2 (2026).  The court should "accept as true all the evidence which supports the position of the party defending against the motion and must accord that party the benefit of all legitimate inferences which can be deduced

11

therefrom." <u>Ibid.</u> If "reasonable minds could differ," the motion should be denied. <u>Ibid.</u>

> When considering a motion for JNOV or a new trial, "[t]he trial judge shall grant the motion if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law." [<u>R.</u>] 4:49-1(a). The factfinder's determination is "entitled to very considerable respect [and] . . . should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination[.]" <u>Baxter v. Fairmont Food Co.</u>, 74 N.J. 588, 597 (1977). . . . The purpose of JNOV is "to correct clear error or mistake by the jury," and not for the judge to "substitute his [or her] judgment for that of the jury merely because he [or she] would have reached the opposite conclusion[.]" [<u>Dolson</u>, 55 N.J. at 6-7 (1969)]. The same standard governs our review of the trial court's determination of a motion for JNOV or a new trial.
>
> [<u>Barber v. ShopRite of Englewood & Assocs., Inc.</u>, 406 N.J. Super. 32, 51-52 (App. Div. 2009) (alterations in original).]

On appeal, our assessment of the verdict is likewise limited. We do not weigh the evidence of the trial court's determinations, but rather determine only whether there was a sufficient basis for the verdict. <u>Dolson</u>, 55 N.J. at 5-6; <u>Barber</u>, 406 N.J. Super. at 51-52. The trial court's denial of JNOV must be affirmed unless, viewing the record most favorably to the verdict winner, no

12

rational factfinder could have reached that result. See Conforti v. Cnty. of Ocean, 255 N.J. 142, 162 (2023).

A.

As a preliminary matter, we reject plaintiff's appeal based on plaintiff's failure to move for a directed verdict at the conclusion of defendant's case under Rule 4:40-1. Though plaintiff failed to move for a directed verdict as required by Rule 4:40-2(b) to preserve her right to file a motion for JNOV, we are satisfied plaintiff's objections to the proposed verdict sheet are "adequate substitute[s]" for the requisite trial motion. Spaulding, 229 N.J. Super. at 442 (App. Div. 1988) (citing Menza, 145 N.J. Super. at 44.).

Before us, plaintiff asserts the judge erroneously denied her motions for JNOV and new trial under Rule 4:40-2(b) "based on the lack of competent evidence in the record to support the jury verdict." In particular, plaintiff argues the verdict was predicated upon the jury answering "Yes" in response to "Question 3" on the verdict sheet as to whether defendant established that "[plaintiff] made misrepresentations during the course of the fire claim investigation and that the misrepresentations actually were 'material or reasonably relevant' to [defendant] in its investigation of the fire claim."

Plaintiff urges us to consider the court's holding in Longobardi v. Chubb Insurance Co., 121 N.J. 530, 541-42 (1990), which she describes as "the seminal case in New Jersey on the element of 'materiality' required to be proven by an insurer to establish a post-loss misrepresentation defense," focusing primarily on the cautionary language in the opinion that "[n]ot every knowingly false statement made by an insured, however, will relieve an insurer of its contractual obligations. Rather, forfeiture results only when the fact misrepresented is material."

Plaintiff maintains defendant failed to present competent evidence capable of meeting the essential element of materiality required for a post-loss misrepresentation defense under Longobardi. See 121 N.J. at 542 (requiring proof that a reasonable insurer would have considered the alleged misstatements important to its investigation and decision-making). Plaintiff further argues Lacoste did not offer any testimony regarding how plaintiff's statements impacted defendant's claim investigation, and defendant did not call its claim investigator or introduce the investigator's recorded statement.

By contrast, defendant asserts that coverage was properly denied and the policy rescinded because plaintiff misrepresented her residency—both in the application and during the claim investigation. Defendant maintains that its

homeowner's policies cover only owner-occupied properties, a point Lacoste explicitly testified about, explaining that the policy's definition of "residence premises" requires actual occupancy by the insured. According to defendant, any misstatement about owner-occupancy is material because it directly affects risk selection and the basis for issuing the policy.

In Longobardi, our Supreme Court conducted an extensive analysis of a "concealment or fraud" clause, which mandated "forfeiture by an 'insured who has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.'" 121 N.J. at 537 (quoting the subject insurance policy). The Court noted the law disfavors forfeitures; thus, such fraud clauses "should be construed if possible to sustain coverage." Ibid. (citing Hampton v. Hartford Fire Ins. Co., 65 N.J.L. 265, 267 (E. & A. 1900)).

Longobardi addressed the question of whether fraud clauses "apply when an insured misrepresents facts to the insurer that is investigating a loss." Id. at 538 (citations omitted). The Court held:

> When an insurer clearly warns in a "concealment or fraud" clause that it does not provide coverage if the insured makes a material misrepresentation about any material fact or circumstance relating to the insurance, the warning should apply not only to the insured's misrepresentations made when applying for insurance, but also to those made when the insurer is investigating a loss. Such misrepresentations strike at the heart of

15

the insurer's ability to acquire the information necessary to determine its obligations and to protect itself from false claims. Thus, an insured's commitment not to misrepresent material facts extends beyond the inception of the policy to a post-loss investigation.

[Longobardi, 121 N.J. at 539.]

However, the Court cautioned that such post-loss misrepresentation must be "knowing and material" for the policy to be voided. Id. at 540. A "mere oversight or honest mistake will not cost an insured his or her coverage; the lie must be willful." Ibid. (citing Claflin v. Commw. Ins. Co., 110 U.S. 81, 95-97 (1884)).

Moreover, "the question of materiality of the alleged fraudulent submissions is for the jury in the civil trial to determine." Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 176 (App. Div. 2000). In McAllister, the insured had been convicted of theft by deception for submitting a false medical bill, after which the insurer filed a civil action to recoup all the benefits paid to the insured on the theory the insured was not injured in the accident. The insurer relied on the language of its policy that it would not provide coverage for an insured "who has made fraudulent statements . . . in connection with any accident or loss for which coverage is sought under this policy." Id. at 171. However, because materiality was not an element of theft by deception in

McAllister, we held the criminal conviction could not be given collateral estoppel in the civil action; rather "the question of materiality of the alleged fraudulent submissions is for the jury in the civil trial to determine." Id. at 176. As such, "[a] jury must assess, as an element of materiality, whether plaintiff would have changed its course of action in assessing the claims upon learning of the fraudulent conduct." Id. at 178.

Adopting the applicable legal standard here, we are satisfied the court properly denied plaintiff's motion for a JNOV and new trial as there was sufficient evidence to support the jury's verdict, although we are not necessarily persuaded in some of the court's reasoning. We reach this conclusion based on the evidence adduced at trial and agree with the court that a rational jury could find that plaintiff knowingly made material post-loss misrepresentations about her residency.

The undisputed language of defendant's policy required plaintiff to reside on the "residence premises" as a condition of coverage. Her inability to establish this condition proved sufficient for the jury to conclude defendant had satisfied its burden in proving plaintiff made misrepresentations during the investigation that were material or reasonably relevant to the fire claim. In fact, plaintiff's testimony utterly failed to establish the critical fact that she resided on the

property at any time prior to the fire loss. Rather, her testimony consisted of explanations for why she did not or could not move onto the property; namely due to the need for renovations, and her decision to remain at her family home to assist her mother in caring for her father, from at least 2017 through 2019.

We recognize that not every knowingly false statement made by an insured will relieve an insurer of its contractual obligations or result in forfeiture; such consequences arise only when the misrepresented fact is "material." McAllister, 327 N.J. Super. at 176-77. Although plaintiff argues defendant offered no direct testimony from its claim investigator to address "materiality," Longobardi permits materiality to be established through reasonable inferences from policy terms, underwriting practices, and the nature of the misstatement itself. 121 N.J. at 542. Again, materiality is measured by whether "a reasonable insurer would have considered the misrepresented fact relevant to its concerns and important in determining its course of action." Ibid.

Prior to deliberation, the court instructed the jury to reach its verdict based on evidence alone and not inference:

> All three elements must be proven by the [d]efendant (a misrepresentation, knowingly made and materiality) based on the evidence introduced at trial. In making your findings of fact, you may not presume facts which are not in evidence. Rather, you must reach your conclusions of facts based only on the evidence

admitted at trial by the parties. Such evidence may be in the form of documents, testimony, or both. Or it may not exist.

If you find that you cannot reach a conclusion as to how the subject of the alleged misrepresentation is reasonably relevant or germane to the investigation, or important in determining the insurer's course of action, then you must not presume that the [d]efendant has proven all three elements: misrepresentation, knowingly made, and materiality. It is up to you to decide.

[(Emphasis added).]

We are satisfied the jury was presented with sufficient evidence for it to find that plaintiff's post-loss misstatements regarding her residency were material to her claim. See Longobardi, 121 N.J. at 541. As such, the trial judge properly deferred to the jury's credibility findings and correctly concluded that the record contained sufficient evidence to support the verdict.

B.

Plaintiff also argues it was plain error to submit question three on the verdict form to the jury because defendant offered no competent evidence that plaintiff's statements affected, or could have affected its investigation, and that presenting this question improperly shifted the burden and caused prejudice.

Plain error in the context of jury instructions or interrogatories requires a showing that the error was "clearly capable of producing an unjust result . . . ."

19

R. 2:10-2. To meet this demanding threshold, the error must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971). Even where an error is identified and may have been undesirable, a verdict will not be overturned unless there is some discernible possibility the error produced an unjust outcome. See Willner v. Vertical Reality, Inc., 235 N.J. 65, 79 (2018).

We remain unpersuaded by plaintiff's argument and discern no error warranting reversal in asking the jury "whether the defendant established that [plaintiff] made misrepresentations during the fire claim investigation and that the misrepresentations were material or reasonably relevant." As defendant asserts, submitting question three on materiality to the jury was proper because there was at least some evidence of materiality, particularly Lacoste's testimony regarding how defendants only issue policies for owner-occupied residences and the disputed facts surrounding plaintiff's residency. See Dynasty, Inc. v. Princeton Ins. Co., 165 N.J. 1, 13-14 (2000) (quoting Lesniak v. Cnty. of Bergen, 117 N.J. 12 (1989) ("'A jury instruction that has no basis in the evidence is insupportable, as it tends to mislead the jury.'")).

Additionally, it was within the purview of the jury to assess the credibility of the witnesses, including reviewing any post-loss misstatements about

20

plaintiff's residency. We are satisfied based on the trial record that the jury had sufficient evidence to conclude plaintiff made post-loss misstatements regarding her use and occupancy of the property in question and that those misrepresentations were material to defendants' decisions. To the extent we have not addressed any of plaintiff's remaining arguments, we discern they are without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

21